ROBERT J. CARSON

*v.*

WILLIAM F. DAVIS.

*Opinion filed February 14, 1898.*

1. MISTAKE—*to warrant reformation of contract evidence of mistake must be clear.* To justify a court of equity in reforming a contract on the ground of mistake, evidence of mistake must be convincing.

2. SPECIFIC PERFORMANCE—*contract must be unambiguous in its terms.* To entitle a party to a decree of specific performance the contract must be clear, certain and unambiguous in its terms, and must either be admitted by the pleadings or proved with a reasonable degree of certainty.

3. SAME—*it is not sufficient to show that a contract of some kind exists between the parties.* To warrant a decree of specific performance it is not sufficient to show that a contract of some kind exists between the parties, and that it has, in whole or in part, been performed by the complainant, but all material parts of such contract must be proved if not admitted.

4. The court considers the contract sought to be specifically enforced in this case, and holds it to be so indefinite and ambiguous in its terms as to warrant the action of the trial court in sustaining a general demurrer and dismissing the bill.

APPEAL from the Circuit Court of Morgan county; the Hon. O. P. THOMPSON, Judge, presiding.

MORRISON & WORTHINGTON, for appellant.

JOHN A. BELLATTI, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Robert J. Carson filed his bill in the circuit court of Morgan county, against William F. Davis, for the specific performance of a contract for the sale of real estate. A general demurrer was sustained to the bill, and leave given to amend. An amended bill was filed praying the same relief, setting up the same contract as in the original bill, but seeking a reformation of the contract and then its specific performance. A demurrer to this amended bill was also sustained and the same dismissed at the complainant's cost. From that decree this appeal is prosecuted, the sole question being, does the bill upon its face state such a case as entitles the complainant to the relief prayed.

The contract set out in the bill is as follows:

"JACKSONVILLE, ILL., *Feb. 21, 1896.*

"This is to certify that Robert J. Carson, of Jacksonville, Ill., has sold his farm in Brown county, Ill., of two hundred and forty acres, at $62 per acre, to W. F. Davis, of the same place, the said Davis to pay for the same in a brick house situated between Harden avenue, Goltra avenue and Superior avenue, and six acres of land, at $6000, and a two-story frame house on South Main street, known as No. —, at $3600, and pay $5400, viz.: The said Davis is to assume an incumbrance on the farm of $9700, with interest from March 1, 1896. The said Carson agrees to assume an incumbrance on the South Main street property of $2000, with four and one-half months' interest thereon, the farm and property on South Main street to be transferred on or before March 10, 1896. Abstracts of said properties to be furnished by the present owners, and insurance policies transferred without costs. The said Carson agrees to allow the said Davis the use of the brick house and six acres of land free of rent until November 1, 1896.

ROBERT J. CARSON,
W. F. DAVIS."

It is then alleged in the bill that the two hundred and forty acre farm in Brown county, intended by the parties, was of certain numbers and description. The bill also alleges that the property to be conveyed by Davis to Carson, being the brick house and six acres of ground,

and the frame house, were situated in the city of Jacksonville, giving the numbers and description. It also states more explicitly the terms of the contract between the parties, but does not attempt in any way to allege that there was a mistake as to the amount which Davis should pay Carson, or that it was the intention of the parties, by the agreement, to bind Carson to pay Davis any sum of money whatever.

It will be seen by reference to the contract that Davis was to pay for the Brown county farm $14,880, deducting an incumbrance of $9700, and yet, according to the agreement, upon its face, he was to convey to Carson the brick house and six acres of land at $6000 and the South Main street property at $3600, deducting an incumbrance of $2000, "*and pay $5400,*" making a much larger amount than agreed to be paid if the prices fixed upon the farm and city property were correctly stated in the contract; and there is nothing in the bill showing whether the confusion in this regard results from a mistake in stating the agreed price of such property, or in the statement that Davis was to pay, in addition to the Jacksonville property, $5400. The only allegation in the bill as to a mistake in that stipulation is, that the sum to be paid by Davis, after deducting the $9700 incumbrance, amounted to $5180, instead of $5400, the assumption seeming to be that the language of the contract as to the payment of that sum by Davis to Carson was intended to indicate such balance, and not to show an amount to be paid by him in addition to the value of the Jacksonville property. The language of the contract, however, is direct and explicit, and, especially in the absence of an allegation that such language was used by mistake, the court has no right to assume that it does not express the true intention of the parties.

Counsel for appellant assume that the language of the contract requiring Davis to pay Carson $5400 and convey the Jacksonville property was inserted by mistake, and

that the intention in fact was to bind Carson to pay to Davis a sum of money equal to the difference between the values of the property under the terms of the agreement, which is estimated to be $2375. There is nothing in the contract to show that Carson agreed to pay Davis any sum of money whatever, nor is there an allegation in the bill to that effect. The language of the bill is: "That after deducting the sum of $5180, balance due for the Brown county farm, which was to be paid by the said Davis in the conveyance of the property at Jacksonville, it left to be paid in cash by your complainant the sum of $2375, which sum was due to the said Davis upon his complying with the terms of said contract and delivery of said deeds as provided for." This is in no sense an allegation as to the terms of the agreement, but simply the statement of a conclusion of the pleader deduced from the other facts stated in the agreement. There is another uncertainty in the terms of the contract which is in no way removed by the allegations of the bill, and that is as to when the brick house and six acres of ground were to be conveyed.

It is conceded that while, under the rules of law, a written contract cannot be altered by parol, yet a court of chancery will, in a proper case, correct mistakes of fact which occurred in drawing up the contract, and then carry into effect the instrument as corrected. (*Broadwell v. Broadwell*, 1 Gilm. 599; *Hunter v. Bilyeu*, 30 Ill. 228.) The requirement of the rule, however, is, that to justify such reformation on the ground of mistake the evidence of the mistake must be convincing. (*Mills v. Lockwood*, 42 Ill. 111.) In this case, the demurrer admitting the facts alleged in the bill so far as they are well pleaded, we entertain no doubt that the uncertainty appearing upon the face of the written contract as to the description of the property might be properly removed by allegations and proof, and the contract specifically enforced if otherwise sufficiently certain. It is, however, a well understood rule that "to

entitle a party to the specific performance of a contract it must be so certain and unambiguous in its terms and in all its parts as that the court can require the specific thing contracted, to be done." (*Koch* v. *National Union Building Ass.* 137 Ill. 497, and cases cited; *Wolfe* v. *Bradberry*, 140 id. 578; *Rock Island and Peoria Railway Co.* v. *Dimick*, 144 id. 628.) "The rule is well settled that a contract which is sought to be specifically enforced must be clear, certain and unambiguous in its terms, and must either be admitted by the pleadings or proved with a reasonable degree of certainty. As was said in *Long* v. *Long*, 118 Ill. 638: 'It is not sufficient, within the rule, to show that a contract of some kind exists between the parties, and that it has, in whole or in part, been performed by the complaining party, but all the material terms of the contract must be satisfactorily proved or admitted.'" (*Barrett* v. *Geisinger*, 148 Ill. 98.) It was said in *Broadwell* v. *Broadwell*, *supra* (p. 606): "Where the parties make a particular agreement, which is correctly reduced to writing, the court will be confined to the writing itself to ascertain what was the intention of the parties, and hence the court will not inquire whether the parties did not intend to effectuate a different object from that which the legal effect of the instrument indicates. The intention of the parties may be one thing and the agreement another."

By the terms of this agreement, as written, Davis was to pay Carson $5400, which fact, taken in connection with the other stipulations, renders the contract so uncertain and ambiguous as to make it impossible for the court to determine from its language what the real intention of the parties was. It is true, we may fairly infer that the intention was, as claimed by counsel, that instead of Davis paying money to Carson the latter was to pay to the former, and ascertain the amount to be so paid by computation. But, as already said, that is not the stipulation in the contract. Suppose the parties to this suit were reversed, and Davis insisting upon a specific per-

formance of the contract on the part of Carson, demand-
ing from him a conveyance of the property held by him
and the payment of $2375 in money. Could it be seriously
claimed that by the terms of the agreement, without
uncertainty or ambiguity, he had agreed to make such
payment? Whether the contract is one upon which an
action at law could be maintained need not be determined.
Under the well recognized rules of law it is so uncertain,
indefinite and ambiguous that a court of equity cannot be
called upon to specifically enforce it, and on this ground
we think the demurrer was properly sustained and the
bill dismissed.

The decree of the circuit court will be affirmed.

*Decree affirmed.*