. JOHANNA GODSCHALK

*v.*

RUBEN H. FULMER *et al.*

*Opinion filed October 24, 1898.*

1. STATUTE OF FRAUDS—*express trust cannot be enforced unless evidenced by writing.* An express trust cannot be enforced in equity against a plea of the Statute of Frauds unless the trust is manifested and proved by some writing signed by the party who is in law able to declare such trust.

2. SAME—*rule as to specific performance not applicable if promise creates an express trust.* The rule that part performance of an oral agreement to convey land may take the contract out of the statute, so as to permit its enforcement in equity, has no application if the oral agreement relied upon by the complainant creates an express trust.

3. SPECIFIC PERFORMANCE—*proof of terms and compliance therewith must be clear.* To warrant a decree of specific performance of a contract to convey, the proof of its terms and of complainant's compliance therewith must be clear and unambiguous.

WRIT OF ERROR to the Circuit Court of Douglas county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

THOMAS J. SMITH, for plaintiff in error.

ECKHART & MOORE, for defendants in error.

Per CURIAM: This is a bill in chancery by plaintiff in error, against defendants in error, to set aside a deed of conveyance by Ruben H. Fulmer to Julius F. Roedel, assignee, to the following described real estate: The east half of the south-west quarter of section 6, township 16, range 9, east of the third principal meridian, in Douglas county, Illinois; and to compel the said Fulmer to convey the same to her, claiming to be the owner, the legal title being held by Fulmer, her brother, in trust for her.

The bill sets up the fact that plaintiff in error, together with her said brother and other members of the family, after the death of their father continued to reside on the

home place, near St. Marys, in the State of Indiana, until complainant reached the age of thirty-one years, when she married and moved to Douglas county, this State; that no division of the home place in Indiana was ever had; that while she remained there, by her labor and attention to the household affairs of the family she contributed to paying an indebtedness against the home farm, and also in purchasing other lands, the title to which was taken in the name of her brothers; that her said brother, Ruben H. Fulmer, has continued to reside upon the home place, exercising ownership over it as his own; that after her marriage and removal to this State he informed her that if she would select a place here he would purchase it for her in lieu of her interest in the Indiana farm, and that, relying upon that promise, she and her husband selected the land in question, then belonging to Henry Gray, and contracted with him for the purchase thereof at a consideration of $3080. The allegation of the bill upon which prayer for relief is based is as follows: "And upon contracting for the same, oratrix notified her brother, Ruben H. Fulmer, of the contracting for such farm, and on the 10th day of March, 1887, the contract for the purchase of said land was consummated, and in consideration of an agreement between oratrix and the said Ruben H. Fulmer, deed was taken to and in the name of said Fulmer, to be by him held in trust for oratrix, for the reason that there were fears that if deed was taken in the name of oratrix, oratrix might, through the influence of her husband, squander and lose the farm for debts made by her said husband, and so it was agreed that the deed might be and was taken in the name of said Ruben H. Fulmer, to be by him held in trust for oratrix until oratrix and her husband would pay off a trust deed lien, which, at the time of the purchase of the same, existed against the said land to the amount of $1500 and interest." She then alleges that she went into possession of the land under that arrangement and has

since resided there, making valuable and lasting improvements thereon and paying all taxes against the land; that the $1500 has been paid off by making a new loan of $2200, the excess being paid to her brother in satisfaction of debts due from her and her husband to him; that she has frequently requested her brother to execute a conveyance for the land to her, but that he has neglected and refused to do so; that on the 14th day of August, 1893, her said brother made a deed of assignment, conveying all his estate to Julius F. Roedel, as' assignee, for the benefit of his creditors. Complainant then tenders a deed of conveyance for all her interest in the Indiana farm, and prays that Fulmer may be required to make a good and sufficient deed of conveyance, and that the deed of assignment be removed as a cloud upon her title.

To this bill the brother filed an answer, which, in effect, is a denial of the allegations of a promise on his part to purchase the land for complainant and an agreement to hold in trust for her. He also sets up the Statute of Frauds in bar of the right of complainant to the relief prayed, on the ground that the trust alleged was not declared in writing.

After a re-examination of the voluminous testimony in this record and the additional arguments filed on the rehearing, we have been unable to reach a different conclusion from that announced in our former opinion. It is impossible to construe the bill of complainant as other than a bill to compel the performance of an express trust. This can be made no plainer than by reference to the allegations above set forth: "*And so it was agreed that the deed might be and was taken in the name of said Ruben H. Fulmer, to be by him held in trust for oratrix until oratrix and her husband would pay off a trust deed lien, which, at the time of the purchase of the same, existed against said land to the amount of $1500 and interest.*" Section 9 of the Statute of Frauds (Rev. Stat. chap. 59,) provides that "all declarations or

creations of trusts or confidences of any lands, tenements or hereditaments sháll be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, * * * or else they shall be utterly void and of no effect." We have uniformly held that agreements like that set up in this bill are, under that section, null and void unless manifested or proved by some writing signed by the trustee. There is no such proof in this record. It is true, resulting trusts, or those created by construction, implication or operation of law, need not be in writing but may be proved by parol; but we have also held that where there is an express trust there cannot be a resulting or implied trust. *Stevenson* v. *Crapnell*, 114 Ill. 19; *Kingsbury* v. *Burnside*, 58 id. 310.

It is said by counsel for plaintiff in error that if one procures a conveyance to himself and promises to re-convey to another, and afterwards refuses to do so, he cannot set up the Statute of Frauds. This proposition is true, the reason being that the title in such case is obtained by fraud and imposition. But here the bill expressly states that the title was taken in the name of Ruben H. Fulmer by and with complainant's consent, to be held by him until she paid off the $1500 lien.

The case is re-argued with much earnestness upon the theory that the bill is one to enforce the specific performance of a contract, and the well known rule that courts of equity will enforce a specific performance within the Statute of Frauds when the parol agreement has been partly carried into execution is quoted and relied upon. The doctrine is not only firmly established, but rests upon sound reason and justice, otherwise one party would be able to practice a fraud upon the other. That principle, however, has no application to an action to compel the execution of an express trust.

But even in the view contended for the evidence does not sustain the allegations of the bill. In addition to the clause quoted above setting up the trust agreement, it is

averred: "And that said land was conveyed to said Ful-
mer with said loan of $1500 secured by trust deed, and
the said Fulmer was to convey said land to oratrix *as
soon as oratrix and her husband would pay off said $1500 trust
deed.*" Nothing is better settled in the law than that a
party cannot have a decree specifically enforcing a con-
tract unless he shows ʻthat he has fully performed the
same on his part, or offered to do so. It is not claimed
by the complainant below, either in her bill or testimony,
that she and her husband have paid "off said $1500 trust
deed loan," or offered to do so. It remains a debt against
the defendant Fulmer, wholly unpaid except as to the
interest. Neither will the specific performance of a con-
tract be enforced unless the contract is certain and un-
ambiguous in all its terms and in all its parts. It must
be so certain that the court can require to be done the
specific thing agreed to be done. (*Koch* v. *National Union
Building Ass.* 137 Ill. 497; *Rock Island and Peoria Railway Co.*
v. *Dimick*, 144 id. 628; *Wolfe* v. *Bradberry*, 140 id. 578.) And
it is equally well settled that to entitle the complainant
in such case to the relief it must clearly appear that a
contract was entered into, and its terms and conditions
must be clearly established by proof. (*McDonald* v. *Min-
nick*, 147 Ill. 651.) Also, that courts will not specifically
enforce a contract on terms not expressed in the agree-
ment set up in the bill. *Hatch* v. *Kizer*, 140 Ill. 583.

The testimony in this record is in irreconcilable con-
flict. We are still of the opinion that the preponderance
of the evidence is that there was some understanding be-
tween the parties, at the time the land was purchased,
that it should become the property of the complainant,
but it is impossible to definitely determine what the
agreement was. The complainant seems, from her testi-
mony, to have understood she was to become the owner
of the land without paying anything, her brother agree-
ing to give it to her in consideration of her interest in
the Indiana farm. Her husband's testimony is to the

effect that he and his wife were to pay off the $1500 trust deed indebtedness, but that the defendant Fulmer was to repay that money to them. It need scarcely be suggested that the allegations of the bill correspond with neither of these statements. In view of the consideration paid for the land in question, and the interest of the complainant in the home farm in Indiana as one of the several heirs of her deceased father, it would seem that the averment in the bill that complainant was to pay off the $1500 debt for which the defendant Fulmer had become liable is more reasonable than the claim in the proofs that nothing was to be paid. It is clear that the proof does not correspond with the allegations of the bill. But aside from the question of a complete and material variance between the allegation and proof in this regard, it is impossible to ascertain, from the evidence adduced, what the agreement of the parties really was.

We are unable to find any tenable ground, consistent with the established rules of law, upon which a reversal of the decree below can be based. It must therefore be affirmed.

*Decree affirmed.*