Argued 1 March, decided 29 May, 1906.

**JENNING v. MILLER.**

85 Pac. 517.

SPECIFIC PERFORMANCE OF CONTRACT TO LEASE—STATUTE OF FRAUDS—
ACT CONSTITUTING PART PERFORMANCE.

The part performance of a contract that will avoid the effect of the
statute of limitations must be an act done in pursuance of the contract
and referable to it solely as an actuating cause; a collateral act done in
reliance on the contract, however prejudicial, is not enough.

This case illustrates the rule: A tenant who had secured an option on
another store in anticipation of having his tenancy terminated by the ex-
piration of his lease, and afterward orally agreed with the landlord for a
continuation of the former lease for three years, cannot claim that his
forfeiture of the option and his continued occupation of the old store were
part performance of the oral agreement, even though he is not able to
obtain any location when the landlord repudiates such agreement, since
neither act is in execution of the oral lease solely, the continued occupa-
tion being referable to the old lease and the forfeiting of the option being
wholly collateral.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit by Henry Jenning & Sons, a private corpora-
tion, against Ernest Miller to enjoin an action of forcible entry
and detainer and for the specific performance of a parol
contract for the leasing of real property. The plaintiff is a
corporation engaged in the furniture and carpet business in
the City of Portland with an investment of about $75,000. Its
furniture and carpet departments are separate, but under the
same general management, and it is therefore important that
they should be as accessible to one another as possible. For
some time prior to February, 1904, the plaintiff occupied two
stores at the northeast corner of First and Yamhill streets,
known as Nos. 174 and 172. The former was used for the fur-
niture department, and the latter for the carpet department,
and there was an opening or passageway between them. The
plaintiff had a lease for three years on No. 174, but was a
tenant from month to month of No. 172, paying therefor a
rental of $80 a month. In January, 1904, it learned that
No. 172 was about to be sold, and that it would probably have
to vacate and move its carpet business elsewhere. Its officers
thereupon began looking about for a suitable building near
and convenient to its furniture department into which it could

move its carpets and curtains. The most desirable vacant
building for that purpose was across the street, and they en-
tered into negotiations with the agent or owner for a lease
thereof, and had practically agreed upon its terms, although
no definite or binding contract had been entered into, when
the defendant became the purchaser of No. 172. Negotiations
were thereupon had between the plaintiff and the defendant
for the leasing by the plaintiff of the premises purchased by
the defendant, and such negotiations resulted in some sort of
an agreement by which the plaintiff continued to occupy the
premises, and gave up and surrendered, with the defendant's
knowledge, its option on or contract for the other building.
The parties disagree as to the terms of the leasing. The plain-
tiff alleges and gives testimony tending to show that it was
understood and agreed that the lease should be for three years
at the same rental it had been paying the former owner, and
that, relying upon such contract and agreement, it continued
to occupy the building and abandoned its efforts to secure an-
other location, and gave up its option or contract on the room
across the street. The defendant, however, denies the contract
as set up by the plaintiff and says that the understanding
was that the lease should only extend to such time as he should
need the premises, and that there was no agreement as to the
amount of the rent. The plaintiff continued in possession
paying $80 a month rent, which was accepted by the defendant,
until December 31, 1904, when the defendant commenced an
action of forcible entry and detainer, whereupon plaintiff com-
menced this suit to enjoin the prosecution of such action, and
for the specific performance of the oral contract of leasing,
alleging that it was then impossible for it to secure a suitable
building near its furniture department for its carpets and cur-
tains, and that if it was compelled to vacate No. 172 it would
be greatly damaged. Upon the trial the suit was dismissed, and
plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief over the name of *Bauer &
Greene,* with an oral argument by *Mr. Thomas Gabbert Greene.*

For respondent there was a brief and an oral argument by *Mr. John Francis Logan.*

Mr. Chief Justice Bean delivered the opinion.

That the contract sought to be enforced in this suit, assuming it to be as plaintiff has alleged, was void under the statute of frauds because not in writing is unquestioned: B. & C. Comp. § 797; *Pulse* v. *Hamer,* 8 Or. 251; *White* v. *Holland,* 17 Or. 4 (3 Pac. 573); *Rosenblat* v. *Perkins,* 18 Or. 156 (22 Pac. 598, 6 L. R. A. 257). But the plaintiff contends that there has been such a part performance as will take it out of the statute. The acts relied upon for this purpose are the possession of the leased premises by the plaintiff and the abandonment by it of the attempt to secure another storeroom, and especially its surrender or release of its right or option on the room across the street, and its inability to secure another. But these are not sufficient to avoid the effect of the statute. The possession by the plaintiff was a mere uninterrupted continuation of its former possession without any change whatever, and under all the authorities this is not enough. The rule on this question is thus enunciated by Mr. Pomeroy, who, after pointing out that if the possession can naturally and reasonably be accounted for upon some supposition other than that of the contract it will not be a part performance, says: "This rule has its most frequent application to cases in which the possession is not a new fact, but is the uninterrupted continuation of a former condition. It results as a necessary corollary from the rule itself that such a possession—one, that is, which merely prolongs a pre-existing situation of the party in reference to the land—cannot alone be a part performance of an intervening contract, since it will be accounted for by the prior condition as naturally as by the new agreement. If, therefore, a verbal agreement is made by a lessor with his tenant, either during the tenancy or after its termination, to grant another lease in place of the existing one, or to renew the lease after the expiration of the prior one, or to sell and convey the land itself, the possession of the tenant continued as under the former holding

cannot of itself be a part performance of the agreement. If the original tenancy has not expired, the possession must, of course, be referred to that; if it has expired, the possession will more naturally be accounted for by the tenant's holding over than by a new contract. As has already been shown, such possession does not raise a presumption as to the intent of the possessor, as is the case where he is an entire stranger to the estate; it must be accompanied by some further act on the part of the tenant in order to stamp its character and connect it with the contract": Pomeroy, Spec. Perf. (2 ed.), § 124. The same doctrine is laid down by the text-writers and the adjudged cases generally: Waterman, Spec. Perf. § 274; Brown, Stat. Frauds (5 ed.), § 476; *Wood* v. *Thornly,* 58 Ill. 470; *Koch* v. *National Union Build. Assoc.,* 137 Ill. 497 (27 N. E. 530); *Swales* v. *Jackson,* 126 Ind. 282 (26 N. E. 62); *Mahana* v. *Blunt,* 20 Iowa, 142; *Rosenthal* v. *Freeburger,* 26 Md. 80; *Spalding* v. *Conzelman,* 30 Mo. 177; *Emmel* v. *Hayes,* 102 Mo. 186 (14 S. W. 209, 11 L. R. A. 323, 22 Am. St. Rep. 769); *Bigler* v. *Baker,* 40 Neb. 325 (58 N. W. 1026, 24 L. R. A. 255); *Johnston* v. *Glancy,* 4 Blackf. (Ind.) 93 (28 Am. Dec. 45).

The abandonment and giving up by the plaintiff of its option or right to the storeroom across the street and its ceasing its efforts to secure another building were not in pursuance of, or in execution of, any contract with the defendant, although it may have been in reliance thereon. It was no part of the alleged contract of leasing that the plaintiff should surrender or give up its option on the other storeroom and the defendant made no contract or agreement in reference thereto. An act of part performance to take a case out of the statute of frauds must be done in pursuance of, or in execution of, the contract alleged, or must obviously be related to or connected therewith, and must be referable solely to such contract. A mere collateral act, disconnected with the agreement, although done in reliance thereon and although prejudicial to the plaintiff, known to the defendant, and incapable of adequate compensation in damages, will not suffice: Brown, Stat. Frauds (5 ed.), § 457. "If," says Mr. Pomeroy, "a plaintiff should, relying upon a verbal agree-

ment, and with the defendant's knowledge, do something prejudicial to himself in a manner and to an extent not susceptible of compensation in damages, but unconnected with that agreement and not in execution of its provisions, this would fall far short of being the part performance required by the rule, in order to admit the remedial jurisdiction of equity": Pomeroy, Spec. Perf. (2 ed.) § 109. This principle is illustrated by the case of *Graves* v. *Goldthwait,* 153 Mass. 268 (26 N. E. 860, 10 L. R. A. 763). The plaintiff and her sisters were tenants in common of real estate. The plaintiff made an oral agreement with them by which she was to pay each a certain sum, and they were to convey to her their right and title to the premises. Five of the sisters, relying upon each and all of these agreements, released their respective interests in the land to the plaintiff, and the stipulated sums were paid. The defendant, however, refused to carry out her contract. In a suit against her for specific performance it was contended by the plaintiff that she had so changed her position by relying upon the defendant's promise that she could not be restored to her original situation and that the injury which would result to her if the defendant failed to carry out her contract was such a fraud as enabled her to invoke the remedial jurisdiction of equity. The court, however, refused to specifically perform the contract on the ground that the purchase of the rights of the other sisters even in reliance on defendant's promise was not in part performance of the contract with the defendant but was purely a collateral matter. So, in the case under consideration, the giving up by the plaintiff of its right or option on the other storeroom was not in performance of, or in pursuance of, any contract with the defendant, but was entirely a collateral matter, and, therefore, not sufficient to take the case out of the statute of frauds.

The decree is affirmed.                          AFFIRMED.